UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MALFATTI,<br><br>       Plaintiff,<br><br>    v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS and BAC HOME LOANS SERVICING, LP,<br><br>       Defendants. | Case No.: C-11-03142-YGR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |

On December 20, 2011, Plaintiff filed a Motion for Leave to File First Amended Complaint. Dkt. No. 22. His Motion followed an Order Granting in Part Defendants' Motion to Dismiss, which dismissed Plaintiff's three claims for cancellation of deeds and the fourth claim to the extent it was claiming a constructive trust. Dkt. No. 21. The Court allowed Plaintiff to seek leave to file an amended complaint. Having read and considered the papers submitted and the pleadings in this action, the Court hereby DENIES this motion for leave to amend.[1]

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

In June 2007, Plaintiff Anthony Malfatti signed two deeds of trust for property located in Oakland, California. In March 2008, he also signed a deed of trust for property located in Richmond, California. Countrywide Bank, FSB, served as the lender on each of these mortgages. On all three deeds of trust, Mortgage Electronic Registration Systems ("MERS") was listed as a beneficiary and nominee for the lender. Shortly after each deed was recorded, defendant BAC Home Loans Servicing, LP (formerly known as Countrywide Bank and referred to herein as "BAC") "represented

---

[1] Plaintiff has requested that the motion be submitted without oral argument. Dkt. No. 30. In light of this and pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that this motion, which has been noticed for hearing on February 14, 2012, is appropriate for decision without oral argument. Accordingly, the Court VACATES the hearing set for February 14, 2012.

to plaintiff that it would be the company to whom plaintiff should make his payments on the above mortgage loans." Dkt. No. 1 ("Compl.") ¶¶ 7, 19, 21 & 25. Following an unanswered request to BAC in February 2011 for a summary of his mortgage payments, Plaintiff alleged that "BAC has not been sending any of plaintiff's payments to any actual creditor/owner of the mortgage," and that BAC wrongfully collected $59,495 in mortgage payments from him. *Id.* ¶¶ 31–33. Plaintiff also "sent a notice rescinding any authorization [he] may have given for MERS to continue acting as any 'nominee' on the deed of trust, and request[ed] that MERS cancel the deed of trust containing its name as a 'nominee.' To date, defendant MERS has failed/refused to cancel the document." *Id.* ¶ 15.

Plaintiff, who proceeds *pro se*, commenced his action in June 2011. His original Complaint asserted four claims: three claims for cancellation of the deeds of trust, and a fourth claim for unjust enrichment and constructive trust against BAC. Defendants moved to dismiss on July 21, 2011. Dkt. No. 7. Plaintiff filed an opposition on August 9, 2011. Dkt. No. 17. On November 29, 2011, the Court issued its Order on the motion ("First Order"). Dkt. No. 21.

In the First Order, the Court granted Defendants' Motion to Dismiss, with leave to amend, as to Plaintiff's three claims for cancellation of the deeds.[2] The Court stated that Plaintiff had failed to show the necessity for cancelling the deeds and, based on Cal. Civ. Code § 3412, failed to explain how he would be caused serious injury if the deeds were not cancelled or how having MERS listed on the deeds damaged his property value. First Order at 4:3–8. Responding to the First Order, Plaintiff points to two paragraphs in his Proposed First Amended Complaint ("PFAC") that he contends cures the defects described by the Court—namely, paragraphs 14 and 15. Mot. at 2:13–15. Plaintiff argues in his motion that "although the deeds of trust are completely severed from anyone who might have any interest in the mortgage notes, and MERS has absolutely no relationship to any such party, it is falsely named as a 'nominee' of the beneficiary in the trust deeds." *Id.* at 2:15–18. Further, "MERS has no authority to direct the deed trustee to release the property from the deeds under any circumstances, even if full payment is made on the notes." *Id.* at 2:19–21. Finally, Plaintiff argues that there is a permanent cloud on the property title, "which prevents the property from being used as

---

[2] The Court also dismissed Plaintiff's fourth claim to the extent it was based on constructive trust because it is not a claim for relief in itself. (First Order at 4:15–20.) In the pending motion, Plaintiff stated that he has "move[d] the constructive trust claim to a type [of] relief request, instead of a cause of action." Dkt. No. 22 ("Mot.") at 2:26–27. Defendants' opposition does not address this amendment and, as such, that amendment is considered unopposed.

2

collateral for anything (i.e. refinancing), as well as impairing the proper receipt of funds if the property were offered for sale." Mot. at 2:21–24.

Defendants oppose Plaintiff's motion on the ground that amendment is futile and that the amended complaint itself is subject to dismissal because it relies on the same defective legal theories as the original Complaint. Dkt. No. 24 ("Opp.") at 2–3. Defendants contend that Plaintiff's amendment re-argues whether MERS was properly named as beneficiary and nominee on the deeds, and further that Plaintiff has failed to identify any legal basis on which MERS is unable to act as a nominated beneficiary by his lender. *Id.* at 4. As beneficiary, MERS could proceed with nonjudicial foreclosure because the party foreclosing need not physically possess the promissory note. *Id.* at 6–7. Moreover, Defendants emphasize that the deeds expressly identify MERS as beneficiary and that Plaintiff acknowledged MERS' role in signing the deeds of trust. *Id.* at 5–6.

## II. DISCUSSION

### A. Legal Standard on Motion for Leave to Amend

Grant or denial of leave to amend rests in the sound discretion of the court. *Swanson v. United States Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). Leave to amend should be allowed freely "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986). A proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (proper test in determining legal sufficiency of a proposed amendment is identical to that used under Rule 12(b)(6)).

Under Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570, 127 S. Ct. 1955 (2007); *Justo v. Charter Capital Corp.*, No. 11-cv-00670 EJD, 2012 WL 359738, at * 3 (N.D. Cal. Feb. 2, 2012); *see Calhoun v. VA MC San Diego*, No. 08cv2064 JM, 2009 WL 1227891, at *1 (S.D. Cal. May 5, 2009) (although leave to amend should be granted liberally to *pro se* plaintiffs, "courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient 'to raise a right to relief above the speculative level'") (quoting

3

*Twombly*). In considering the sufficiency of a claim, the court must accept as true all of the factual allegations in the complaint, but it "is not required to accept as true legal conclusions cast in the form of factual allegations." *Justo*, 2012 WL 359738, at * 3 ("[r]ecitals of the elements of a cause of action and conclusory allegations are insufficient") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)).

### B. California Civil Code Section 3412

Plaintiff's claims for cancellation arise under Civil Code section 3412. *See* First Order at 4. The statute provides "[a] written instrument, in respect to which there is a *reasonable apprehension* that if left outstanding it may cause *serious injury* to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." (Emphasis supplied.)

### C. Role of MERS in the Mortgage Industry

MERS is often named as a defendant in foreclosure cases. The Ninth Circuit recently explained some of the history behind MERS in *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011). MERS is a private corporation that tracks the transfer of the beneficial interest in home loans and changes in loan servicers. *Id.* at 1038. When a borrower takes out a loan, the original lender may sell all or a portion of the beneficial interest in the loan and change loan servicers. While the owner of the beneficial interest (the lender) is entitled to repayment of the loan, the servicer of the loan collects payments from the borrower, sends payments onto the lender, and handles administrative aspects of the loan. *Id.* at 1038–39. When a borrower takes out a home loan, two documents are executed in favor of the lender: a promissory note to repay the loan and a deed of trust that transfers legal title in the property as collateral to secure the loan if default occurs. The deed and subsequent sales or assignments thereof are to be recorded in county records in accordance with state laws. *Id.* at 1039. Due to the frequent sale and trading of loans, the recording process became cumbersome to the mortgage industry. As a result, MERS was designed to avoid the need to record multiple transfers of a deed by serving—at the outset—as the nominal record holder on the deed on behalf of the original lender and any subsequent lender. *Id.*

4

Under this model, MERS is designated in the deed of trust as nominee for the lender and the lender's successors and assigns, and as the deed's beneficiary which holds legal title to the security interest being conveyed. *Cervantes, supra,* 656 F.3d at 1039. When a lender sells or assigns the beneficial interest to another MERS member, the change is recorded only in the MERS database and not in the county records, since MERS continues to hold the deed on the new lender's behalf. *Id.* In order to be a member of MERS, companies must pay a fee. *Id.* If the beneficial interest in a loan is sold to a non-MERS member, the transfer of the deed must be recorded in county records because the loan is no longer tracked in the MERS system. *Id.* In *Cervantes*, and in many other mortgage cases, an underlying premise of the lawsuit is that MERS impermissibly splits the promissory note and the deed by facilitating the transfer of the beneficial interest in a loan among lenders while maintaining MERS as the holder of the deed. *Id.*

MERS' authority to act in foreclosure cases has been addressed by numerous courts in the Northern District and in California state court. "Under California law, there is no requirement for the production of an original promissory note prior to initiation of a nonjudicial foreclosure." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009); Cal. Civ. Code § 2924; *Lomboy v. SCME Mortg. Bankers,* No. C-09-1160 SC, 2009 WL 1457738, at *5 (N.D. Cal. May 26, 2009). Plaintiffs in these cases argue that foreclosures are invalid based solely on the fact that MERS is the beneficiary of the deed of trust but does not hold the promissory note on the loan. *Pantoja*, 640 F. Supp. 2d at 1186. Courts have often looked to the language of the deed of trust itself in analyzing whether MERS had the legal right to foreclose on property. *Id.* at 1188–90. Despite plaintiffs' frequent arguments that—as nominee of the lender and beneficiary—MERS has no legal or beneficial interest in the promissory note and has no authority to foreclose on property, the language in the deed of trust itself often dictate otherwise. Specifically, "courts have been clear to allow MERS to conduct the foreclosure process when granted the power of sale provision." *Id.* at 1190; *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1156–57 (Cal. Ct. App. 2011) (no "factual basis to suspect that MERS lack[ed] authority to proceed with foreclosure" and explicit language in deed of trust precluded plaintiff from arguing the same).

**D. Plaintiff's Proposed Amendments Fail to State a Claim.**

Plaintiff here seeks cancellation of the deeds, not wrongful foreclosure. The Court, under the most liberal interpretation, construes Plaintiff's allegations as challenging the role of MERS in the mortgage industry and its authority to act as a beneficiary and nominee of the deeds. The Court's First Order stated that Plaintiff failed: (1) to show the necessity of cancelling the deeds; (2) to explain how he would be caused serious injury if the deeds were not cancelled; and (3) to allege how having MERS listed on the deeds damaged his property value. First Order at 4.

Plaintiff's proposed new allegations (and the preceding paragraph) read as follows:

> 13. Since MERS is not owed anything and is not the actual mortgage creditor or representative thereof, the continuing inclusion of its name on the deed of trust is a false statement in the county record and nothing more than a cloud on the property title.
>
> 14. Due to the above, the Deed of Trust is completely severed from anyone who may have any actual interest in the loan note, and is nothing but a cloud on the property title.
>
> 15. Plaintiff will suffer serious damage because, although MERS has no interest whatsoever in the mortgage, no relationship to anyone who does have any interest in the mortgage, and therefore no authority to direct the deed of trust trustee to release the property from the deed under any circumstance (even full payment of the loan), the deed of trust will remain in perpetuity, regardless of the fact the mortgage note may be fully paid. This allows not only for the current cloud on title to remain in effect, but also for a permanent cloud, all to plaintiff's detriment. The existing deed of trust with MERS name on it is clouding title to the property, impairing its market value, not allowing the property to be used for collateral to the extent of MERS' claim, and impairing the proper receipt of funds if the property were offered for sale.

Dkt. No. 22-1.

In evaluating the proposed paragraphs 14 and 15, the Court finds that Plaintiff's proposed amendments do not cure the legal defects outlined in the First Order. The inadequacies are three-fold. First, the PFAC fails to provide additional factual allegations to state a legal claim, but instead, merely re-phrased the original allegations. *See* Compl. ¶ 17 ("The existing deed of trust with MERS name on it is clouding title to the property, impairing its market value."); *see id.* ¶ 13 ("Since MERS is not owed anything and is not the actual mortgage creditor or representative thereof, the continuing

inclusion of its name on the deed of trust is a false statement in the county record and a cloud on the property title."); *see, generally, id.* ¶¶ 8–12 (alleging MERS was improperly listed on the deeds).

Second, the proposed amendments still lack sufficient allegations to show that if the deeds were not cancelled a "reasonable apprehension" of "serious injury" would occur. In fact, Plaintiff still fails to allege how his property value could be damaged. The "cloud" that Plaintiff references is conclusory and without factual foundation. The role of MERS has been examined by many courts and, without more, severing the note from the deed cannot serve as the basis for cancellation. *See Cervantes*, 656 F.3d at 1042 ("[T]he plaintiffs have failed to show that the designation of MERS as a beneficiary caused them any injury by, for example, affecting the terms of their loans, their ability to repay the loans, or their obligations as borrowers."). Plaintiff alleges he will be injured no matter what he does—whether he pays off the note in full, sells the property, or tries to refinance and use his property as collateral. As to whether this is sufficient to state a claim for cancellation, "plaintiff fails to allege why the deed of trust is void or voidable, and how she has suffered or will suffer serious harm as a result of MERS's designation in the deed of trust." *Gomes v. Mortgage Electronic Registration Sys., Inc.*, No. S-11-1790 KJM GGH PS, 2012 WL 370542, at *2–3 (E.D. Cal. Feb. 3, 2012) (Magistrate Judge recommending dismissal of almost identical cancellation claim against MERS without leave to amend because deficiencies could not be cured).[3] The Court is not required to accept these conclusory allegations as true. *Ashcroft v. Iqbal*, 129 S.Ct. at 1951 ("It is the conclusory nature of [the] allegations . . . that disentitles them to the presumption of truth.").

Finally, in light of Plaintiff's recognition that MERS was named as nominee and beneficiary in the deeds that he signed and the written disclosures in the deeds themselves, it is unlikely that Plaintiff will be able to cure. *See* Compl. ¶¶ 7, 19 & 21. Plaintiff also acknowledges the deeds state that MERS has the power to cancel if it may become necessary by law or custom. *Id.* ¶ 14. There is no indication of fraud or surprise, and accordingly, without more, no plausible basis to conclude that Plaintiff had a "reasonable apprehension" that the deeds would cause "serious injury" if not cancelled.

---

[3] The *Gomes* court also found unavailing plaintiff's allegations that "neither Countrywide nor the current assignee/ transferee of the loan is a member of MERS and [] MERS therefore cannot act as their nominee." 2012 WL 370542, at *3. The court concluded that status as a member of MERS is irrelevant where the lender, via the deed of trust, authorizes MERS to be its nominee and beneficiary in the deed and MERS consents to the designation. *Id.* (finding such allegations "conclusory and entirely speculative").

*Gomes*, 2012 WL 370542, at *2 ("[T]he mere status of MERS as nominee for the lender and beneficiary under the deed of trust cannot cause plaintiff any injury.").

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion seeking leave to amend the three causes of action for cancellation is **DENIED.**

The Court notes that the cause of action for unjust enrichment against Defendant BAC is the only remaining claim in this action. *See* Dkt. No. 21. Accordingly, Defendant MERS is hereby **DISMISSED WITH PREJUDICE** from this action. Defendant BAC must answer Plaintiff's original Complaint with regard to unjust enrichment within fourteen (14) days of the date of this Order.

Pursuant to Fed. R. Civ. P. 16(b) and Civil L. R. 16-10, a Case Management Conference shall be held in this case on Monday, March 26, 2012, at 2:00 p.m. The parties must file case management conference statements fourteen (14) days in advance of the case management conference date; although separate statements will be permitted pursuant to the Court's Standing Order in Civil Cases, a joint statement is encouraged. The statement(s) must include all elements requested in the "Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement."

As set forth in the Court's Standing Order in Civil Cases, these conferences are intended to be substantive and productive. Accordingly, Defendant shall be represented at the Case Management Conference by counsel with authority to enter into stipulations and make admissions pursuant to Fed. R. Civ. P. 16(a) and (c), as well as fully prepared to address all of the matters referred to in the CAND CMC Order and Civil L.R. 16-10(b). Plaintiff shall be prepared to address the same topics. Failure to do so shall be considered grounds for sanctions.

**IT IS SO ORDERED.**

Dated: February 10, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

8